## ELMENDORF *vs.* HARRIS.

In a suit at law on an arbitration bond for not performing an award, it is no defence that the party sought to be charged had not notice of the hearing, and did not attend.

A *parol* appointment by arbitrators of an umpire is good, unless the submission require it to be made in writing.

The case of *Peters* v. *Newkirk,* 6 *Cowen,* 103, reviewed in opinion of C. J. and note.

ERROR from the New-York common pleas. Elmendorf was the surety of one Taylor to an arbitration bond entered into by him with Harris, to abide the award of two arbitrators to be made by a certain day, and if they could not agree and determine and make their award, then to abide the award of an umpire, to be chosen by the arbitrators. Previous to the time limited for the making of the award by the arbitrators, they appointed by parol an umpire. Subsequently one of the arbitrators wholly refused to act, and the umpire proceeded to the examination of the plaintiff's books, heard the testimony of one witness, and made an award in favor of the plaintiff for $519,83 ; notice of the hearing before the umpire was not given to the defendant or his principal, nor did they attend. Harris sued Elmendorf on the arbitration bond, and the above facts appeared in the common pleas. The defendant objected to a recovery, insisting that an appointment of an umpire by *parol* was not good ; that it should have been in writing, and under seal ; and that the hearing before the umpire being *ex parte* without notice to the defendant or his principal, the award was void, and the plea of *no award* was sustained. The judge overruled the objections, and the plaintiff recovered. The defendent tendered a bill of exceptions.

*H. W. Warner,* for plaintiff in error. An umpire cannot be appointed by *parol* when the submission is by bond under seal. The parties having submitted the matters in controversy by writing under seal, the evidence of the act of the arbitrators ought to be equally deliberate and certain. There

ALBANY,
October, 1830.

Elmendorf
v.
Harris.

should not be left room for doubt or contradiction. An attorney to execute a deed cannot be appointed by parol, *Paley on Agency*, 133 ; and *Caldwell on Arbitration*, 42, says, it seems there should be a formal written appointment of the umpire ; the most usual way is by an endorsement made by the arbitrators upon the instrument of submission.

The umpire's decision in this case is not an award, it being made without notice to the defendant or his principal of the hearing, and neither of them attending. It is a nullity, as much so as an award made after the day, or by a person not authorized. A judgment of a sister state is *prima facie* evidence, but if the fact appears that it was rendered without notice to the party sought to be affected by it, it is void. 5 *Johns. R.* 37. 8 *id.* 173. 13 *id.* 192. 15 *id.* 121. In the marginal note to the case of *Peters* v. *Newkirk*, 6 *Cowen*, 103, it is said, "An award made without giving notice to the parties, so that they can be heard before the arbitrator, is a nullity." Mr. Justice *Woodworth*, in delivering the opinion of the court, says, "Both parties should have had notice, so that an opportunity might be afforded to submit their remarks to the appraiser, and adduce proof if deemed necessary. The plainest dictates of natural justice require that no man shall be condemned unheard. The right to notice was implied in the agreement to submit." This decision was followed by that of *Gould* v. *Gould & Banks*, not reported, in which the judge at the circuit charged the jury that if an *award* of *arbitrators* had been obtained by misrepresentation it was void, and the jury found accordingly, and this court refused to grant a new trial, confirming the decision in *Peters* v. *Newkirk*. In this case the submission was agreed to be made a rule of court ; had the plaintiff under the agreement sought to have enforced the award, the defendant might have avoided it, on the ground of its being procured by corruption or undue means, 1 *R. L.* 126 ; but having instead thereof brought his action on the award, the defendant ought not to be deprived of his defence.

*J. H. Hatch*, for defendant in error. The appointment of the umpire by *parol* was good ; the submission prescribing

no form in which it should be made, the arbitrators might make it as in their discretion they thought fit. Unless they exceeded their authority, their act will be ratified. What is said by *Caldwell* in his treatise is only advisory ; it is no authority, being unsupported by any adjudged case.

The common pleas decided that the defence was unavailable at law, and so are the decisions here as well as in England. 1 *Johns. Ch. R.* 101. 2 *id.* 339, 551. 2 *Johns. R.* 62. 3 *id.* 367. 10 *id.* 140. 17 *id.* 405. 7 *Cowen,* 185. *Caldwell on Arb.* 203, 4. 8 *East,* 344. The only case in our courts holding a different doctrine is that of *Peters* v. *Newkirk;* and what is said on this subject in that case is *obiter,* being unnecessary to the decision of the question then before the court ; besides, 4 *Dallas,* 232, cited by the learned judge, on examination, will be found not to support the position he assumes. As to the case of *Gould* v. *Gould & Banks,* not being reported, it is unknown upon what principles and under what circumstances the decision was made.

*By the Court,* SAVAGE, Ch. J. Although the submission was under seal, no direction was given to the arbitrators as to the manner of appointing the umpire ; and no adjudged case has been shewn requiring the appointment to be under seal or even in writing. *Caldwell on Arbitrations,* 42, says, " It seems there should be a formal written appointment of the umpire ; the most usual way is by an endorsement made by the arbitrators upon the instrument of submission." He refers to *Still* v. *Halford,* 4 *Campb.* 17, where evidence of the umpire acting with the arbitrators, and the recitals in the award, were considered insufficient to prove the appointment —Lore Ellenborough said there must be a formal act of appointment ; and to the case of *Rutledge* v. *Thornton,* 4 *Taun.* 704, where the court held that an appointment of umpire need not be on stamped paper. These cases, at most, shew that an appointment in writing is proper, but they do not shew it necessary. It is not uncommon for the submission itself to be by parol, and there is no legal objection to a parol appointment of an umpire unless the submission require it to be in writing. The more important question, however, is

whether in a court of law an award can be avoided by shew-ing partial or corrupt conduct in the arbitrators.

This question has been frequently decided both in England and in this state. It arose in *Willis* v. *McCarmick*, 2 *Wils.* 148, upon the plea of *nil debet* to debt on an award, where the court said there never was an instance where this kind of evidence was permitted to be given ; it would be to suffer evidence that affects third persons, the arbitrators ; an award is a judgment by judges chosen by the parties themselves ; a jury in a special verdict cannot find any matter of fact *dehors* the award ; by parity of reason, nothing *dehors* the award can be given to them in evidence. In *Braddick* v. *Thompson*, 8 *East*, 344, the court refused to hear an argument on the question. In *Barlow* v. *Todd*, 3 *Johns. R.* 367, Spencer, justice, in delivering the opinion of the court, cites 2 *Wils.* 148, and says, " It is now well established that at law noth-ing *dehors* the award invalidating it can be given in evidence to the jury. The arbitrators are judges chosen by the par-ties themselves, and their awards are not examinable in a court of law, unless the condition is made a rule of court, and then only for corruption or gross partiality. Their award is like a judgment. Courts of law cannot listen to sugges-tions contradicting the award or impeaching the conduct of the arbitrators." In *Cranston* v. *Kenney's Executors*, 9 *Johns. R.* 212, the same learned judge reiterates the same doctrine, and adds, " Under the statute, and where the submission is agreed to be made a rule of court, power is given to the courts of common law jurisdiction to set aside any arbitra-tion or umpirage procured by corruption or undue means; and this is the limit of the authority of those courts." The question arose on a motion to set aside an award made upon a submission of the parties without any rule or order of the court, and the court refused to entertain it. In such case, however, the party is not remediless, but his remedy is in a court of equity. A refusal by the arbitrators to hear proper testimony, or hearing testimony *ex parte*, is such misconduct as will vitiate an award in a court of equity. 17 *Johns. R.* 410. 6 *Vesey*, 72.

An application to set aside an award in a court of law for corruption or partiality is addressed to the equitable powers of the court, and, according to the statute, must be made before the end of the term next after the award made; but matters appearing on the *face of the award* may be relied on to resist an attachment for not performing the award at any time when the motion for the attachment is made. 7 *T. R.* 73.

The true doctrine then seems to be this : that where there is an agreement to make the submission a rule of court, the award may be enforced either by action or by attachment; and in either case the defendant can resist for matter appearing on the face of the submission and award, and for such only. If the defendant wishes to avoid the award for matter *dehors* the award, as for corruption or partiality, he must apply for that purpose by motion within the time specified by statute. If there is no stipulation to make the submission a rule of court, or when in fact there is no rule entered, the award can be enforced by action only ; and in such case the defendant may avail himself of any matter appearing on the face of the award and submission, but no other. In such case, if the person dissatisfied with the award wishes to avoid it for the improper conduct of the arbitrators, or any matter *dehors* the award, he has no remedy in a court of law by motion, but must apply to a court of equity. Such seems to be the law as settled on authority. *Kidd*, 346.

But it is said there have been some recent cases in this court in which it was decided that want of notice to the parties of the proceeding of the arbitrators was held a good defence at law ; and the case of *Peters* v. *Newkirk*, 6 *Cowen*, 103, is referred to, and also a subsequent case of *Gould* v. *Gould & Banks*. *Peters* v. *Newkirk* was an action on the case for making a distress when no rent was due. The rent had been liquidated at $87,75, and it was agreed that a shearing machine should be received in part payment at the appraisal of one Sturges. He appraised the machine at $85, which left $2,75 of rent due when the distress was made. The court decided that the action brought by Peters did not lie, *there being rent*

ALBANY,
October, 1830.

Elmendorf
v.
Harris.

*due.* In the opinion delivered it was said, (though not necessary to the decision of the cause,) that the appraisement was void for want of notice to the person to be charged with it. This proposition is certainly consonant to reason and good sense, and is well established as a principle of equity. The only reasons why the award of arbitrators cannot be impeached at law for corruption or improper conduct in the arbitrators, are 1. Because the award is in the nature of a judgment between the parties, rendered by judges of their own choosing; and 2. Because the arbitrators, whose conduct is impeached, have no opportunity of being heard in their defence. I shall not stop now to enquire whether these reasons are sound or not, because I consider the question too well settled on authority, to be changed by a judicial decision. As to the appraisement referred to in *Peters* v. *Newkirk*, it could hardly be dignified with the name of an award. Even if it should be so considered, it was not made the foundation of an action. It seems to me, however, there is an essential difference between an award upon matters in controversy between parties and a bare appraisement of a chattel. But if there is not, and the appraisement is to be considered an award in legal effect and operation, then it must be conceded, that point was not decided in accordance with the whole current of authority.

The case of *Gould* v. *Gould & Banks,* was this : W. Gould & D. Banks had given their bond to S. Gould for $2290. On the bond was endorsed an agreement that if the obligors performed what was required of them by an award before then made, in pursuance of an arbitration had between the parties, they should be liable to pay only one half of the condition of the bond, viz. $1145; that it should be referred to C. Sands and M. Ward to decide whether they had performed the award ; and that *until* it should be decided that they had *not* performed the award, they should not be liable to pay more than one half of the condition of the bond. S. Gould brought his suit and claimed to recover the *whole* of the condition, and proved by C. Sands that he and Ward decided that the obligors had *not* performed the award, and gave a certificate to that effect. On his cross-examination

the witness stated that the decision was made on an *ex parte* hearing of S. Gould, and that he and Ward being subsequently satisfied that they had acted erroneously, they annulled the certificate. It was further proved by the defendants that Sands and Ward had in fact made their dicision on a mistaken state of facts. The judge at the circuit charged the jury that if they should find that false representations had been made by S. Gould to the *arbitrators*, viz. Sands and Ward, and that he had urged them to make an *ex parte* award, without giving W. Gould and S. Banks notice, so that they might be heard, and that in consequence of such persuasions and false representations the *arbitrators* had been induced to make the *award* in question, that the award was founded in fraud and void. The jury found a verdict in conformity to this charge, and on application to this court a new trial was refused.

In reference to this case it will be observed that the question decided by the certificate was not the result of an investigation into matters in difference, but a bare decision that the parties had *not performed* what was required of them by a certain award, and the referees discovering that they had been imposed upon, annulled their certificate. Taking these circumstances into consideration, we were inclined to the opinion that there was no act done by these arbitrators, if they are so to be considered, obligatory upon the parties. But in reference to this case also, it must be admitted that if the first certificate given is to be considered as an award and final determination, then the decision allowing it to be attacked was incorrect.

Upon a review of those cases it certainly does not appear that this court have intended to make any decision claiming jurisdiction on suit brought to investigate the frauds or corruption of arbitrators; that is a subject belonging to a court of equity. Such was the decision in this case in the court below, and the judgment must be affirmed with single costs.

Judgment affirmed.*

* The misapprehension which appears to have existed in relation to the decisions of the court in *Peters* v. *Newkirk*, 6 *Cowen*, 103, and in *Gould* v. *Gould & Banks*, referred to by the C. J. in the opinion delivered by him, most

probably has arisen solely from the mode of expression adopted in the ab-
stract of the one case, and in the charge of the circuit judge in the other, by
applying to a *reference of a collateral fact*, terms which appropriately belong on-
ly to an *arbitration*. In *Peters* v. *Newkirk*, the abstract at the head of the
case is in these words : " An *award* made without giving notice to the par-
ties, so that they can be heard before the *arbitrator*, is a nullity ;" and in *Gould*
v. *Gould & Banks*, the circuit judge charged the jury that if they should find
that false representations had been made to the *arbitrators*, and that in con-
sequence thereof they had been induced to make the *award*, such award was
void. The language used certainly would create the impression that an *ar-
bitration* was spoken of, whereas by examining the transactions in reference
to which the expressions were used, it is manifest that neither of them was
an arbitration. An *arbitration* is a submission by parties of matters in contro-
versy to the judgment of two or more individuals, who are substituted in the
place of a judicatory established by law, and who are *to decide the controversy*;
it is called a *domestic tribunal*, and the arbitrators *judges* of the parties choos-
ing, and is held in high estimation both by the legislature and by the courts ;
the legislature having made provision for carrying into effect awards made,
and courts of law refusing to hear any thing *dehors* the awards invalidating
them. A *reference* of a collateral fact, or the submission of a particular ques-
tion, forming only a link in the chain of evidence, is not calculated to put an
*end* to controversy ; it barely substitutes the judgment of the referee in the
place of evidence, leaving the controversy open. Such reference or submis-
sion, although it has several of the characteristics of an arbitration, falls short
of it in its principal feature, *the ending of the controversy*; public policy does
not require that it should be considered as an arbitration, not has it been so
treated by the courts.