## FREDERICK WEISS v. HERMANN JAHN.

Under the first section of the supplement of 1848 to the landlord and tenant act, goods taken from the demised premises during the term, but before the rent accrued, can be distrained off the demised premises for such subsequently accruing rent, within thirty days after their removal.

In replevin. On case certified from the Hudson Circuit.

The defendant, Jahn, as bailiff of one Ruh, distrained the goods of plaintiff, Weiss, in Hoboken, in November, 1871, for $125, one quarter's rent due on November 1st, 1871, in advance, for premises in Union Hill, hired by Weiss from Ruh, from May 1st, 1871, to May 1st, 1872. Weiss had removed from the premises in Union Hill a few days before November 1st, 1871, but less than thirty days before the distress, taking with him the goods which were afterwards distrained, but he left a few articles (not distrained) on the

demised premises until after November 1st, 1871, and the keys were actually delivered to Ruh, after that day.

Weiss replevied the goods taken in distress, and the question certified to the Supreme Court is, whether, under the circumstances above set forth, the goods taken from the demised premises during the term, but before the rent accrued, could be distrained off the demised premises for such subsequently accruing rent, within thirty days after their removal? If the court shall advise that such a distress is legal, then judgment shall be rendered for defendant for $125, and interest from November 1st, 1871 ; if not, then judgment shall be for plaintiff.

Argued at February Term, 1874, before BEASLEY, Chief Justice, and Justices SCUDDER, VAN SYCKEL and WOODHULL.

For the defendant, *Dixon.*

The opinion of the court was delivered by

WOODHULL, J.   Distress for rent being merely a remedy for the non-payment of rent in arrear, it can in no case be lawfully made before the rent is due, by the terms of the lease.   3 *Bl. Com.* 6, 7 ; *Bradb. Dis.* 87, (1 *Law Lib.* 53.)

But on whatever day the tenant agrees that the rent shall become due, the landlord may distrain for it at that time. *Buckley* v. *Taylor*, 2 *T. R.* 600 ; *Bradb. Dis.* 69, 89 ; (1 *Law Lib.* 43, 55.)

Rent payable in advance may therefore be distrained for immediately, if not paid when due.   *Russell* v. *Doty*, 4 *Cow.* 576 ; *Peters* v. *Newkirk*, 6 *Cow.* 103 ; *Conway* v. *Starkweather*, 1 *Den.* 113.

As rent, however, is not strictly due until the last minute of the natural day on which it is reserved, it cannot be distrained for before the next day.   *Bradb.* 89, (1 *Law Lib.* 55 ;) *Duppa* v. *Mayo*, 1 *Saund.* 287 ; *Ib.* 288, *note* (17) ; *Rockingham* v. *Oxenden*, 2 *Salk.* 578, and cases cited.

It follows from these principles, that for the quarter's rent due November 1st, 1871, the goods in question, whether on or off the demised premises, were not liable to distress until November 2d, 1871.

On what day in November they were distrained, does not appear.

The statement in the case does not exclude the supposition that it may have been on the first day of that month, at which time, as has just been shown, they could not be lawfully distrained, even on the demised premises.

It may reasonably be presumed, however, from the circumstances stated, and I shall assume the fact to be, that the distress in this case was made after the 1st day of November, 1871. It was also made within thirty days after the removal of the goods from the demised premises ; so that there can be no valid objection to the distress, on the ground that it was not made at the proper time.

But as there was no rent actually due when the goods were removed, the question remains whether they could lawfully be distrained off of the demised premises, even within the thirty days.

At the common law, a distress for rent could be made only on the demised premises. 3 *Bl. Com.* 11.

The single exception to this rule was, that if the landlord, going to distrain, saw the cattle on the demised premises, and the tenant, to prevent the distress, drove them from off the premises, the landlord might then follow and distrain them. *Poole* v. *Longuevill*, 2 *Saund.* 284, *n.* (2.)

Even in a case of a clandestine and fraudulent removal of goods from the demised premises by the tenant for the purpose of avoiding a distress, the landlord was without remedy. A provision in the statute 8 *Anne, ch.* 14, § 2, was the first to give the landlord any redress in such a case, by empowering him to follow and distrain the goods, within five days after their removal. And this provision was afterwards enlarged by statute 11 *Geo. II, ch.* 19, § 1, by extending the

term within which the removed goods may be followed and distrained, to thirty days.

In construing this remedial provision of the statutes just referred to, it has been almost uniformly held by the English courts, notwithstanding the doubt expressed by Lord Ellenborough in *Furneaux* v. *Fotherby*, 4 *Camp*. 136, that the landlord's right to follow goods removed from the demised premises does not attach, unless the rent has actually become due before the removal.   *Watson* v. *Main*, 3 *Esp*. 15 ; *Rand* v. *Vaughn*, 1 *Bing*., *N. S.*, 767 ; *Poole* v. *Longuevill*, 2 *Saund*. 284, *note* (2.)   See *contra Dibble* v. *Bowater* 2 *El. & Bl.* 563.

The only substantial difference between the 14th section of our act concerning distresses (*Nix. Dig*. 242) and statute 11 *Geo. II, ch*. 19, § 1, seems to be that, by our act, the landlord's right to follow goods off the demised premises, depends simply upon the fact that they have been conveyed away by the tenant, no matter how or for what purpose, leaving rent due and unpaid ; while, in addition to this, the landlord, to bring his case within the English statute, must show that the goods were removed fraudulently or clandestinely to prevent him from distraining.   *Parry* v. *Duncan*, 7 *Bing*. 243. In other respects, the provisions of the two sections are the same, and ought to receive the same construction.

By the statute 11 *Geo. II*, the right to follow, &c., is given, " in case any tenant, &c., shall convey away, &c., to prevent the landlord from distraining, &c., for arrears of rent ;" our 14th section gives the right, " if any tenant, &c., shall convey away, &c., leaving the rent, or any part thereof, unpaid."   The difference between the two, with respect to the point now under consideration, is merely verbal.

By *rent unpaid*, in our act, is meant nothing else than *arrears* of *rent*—that is, rent behind in payment, although due.

This is placed beyond doubt, by the fact that, twice in the same section, these very words, " *arrears* of *rent*," are found referring back to the clause, " leaving the rent, or any part thereof, unpaid."

As our act concerning distresses was passed originally in

Weiss v. Jahn.

1795, and remained without material change until 1848, it results, from what has been said, that, previous to the year 1848, our law gave no right to distrain in a case like the present.

A tenant, by simply removing his goods from the demised premises a day or two before the rent became due, might defeat the landlord's remedy by distress.

It was in view of this defect in the law, as it then stood, and for the very purpose of supplying it, that the supplement of March 9th, 1848, was passed.

The first section of this supplement reads as follows: "The fourteenth section of the act to which this is a supple- ment, shall extend to all cases where rent shall have accrued and shall be unpaid, upon any demise or contract hereafter made, although, by the terms thereof, the rent shall not be payable."

This language is not free from obscurity; and, taken out of its connection with that part of the 14th section to which it relates, is scarcely intelligible. But, reading it in that connection, and bearing in mind what that part of the 14th section had always, up to that time, been understood to mean, it will be difficult, I think, to resist the conclusion that the very object of this section was to bring within the operation of the 14th section precisely such cases as the one now before us. The words, "where rent shall have accrued, and shall be unpaid," as well as the words, "although, &c., the rent shall not be payable," have reference to the time of removal, and I understand their effect to be simply this: the 14th section gave the right to distrain off the premises only when there was rent unpaid and payable at the time the goods were removed; as enlarged by the first section of the supplement of 1848, it gives the same right whenever there is rent unpaid, although not yet payable at the time of the removal.

The Circuit Court is advised that the distress in question was legal.